IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 9, 2008

## JIMMIE LEE HOYLE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Hardeman County**
**Nos. 06-01-0173, 06-01-0250    J. Weber McCraw, Judge**

---

**No. W2008-00624-CCA-R3-PC  -  Filed November 12, 2008**

---

The petitioner, Jimmie Lee Hoyle, appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erred in finding that he received effective assistance of trial counsel and entered his guilty pleas knowingly and voluntarily.  Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

Gary F. Antrican, District Public Defender, and Shana C. Johnson, Assistant District Public Defender, for the appellant, Jimmie Lee Hoyle.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Joe L. VanDyke, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

The petitioner was indicted by the Hardeman County Grand Jury in Case Number 06-01-0173 for five counts of delivery of .5 grams or more of cocaine, a Class B felony, and one count of delivery of less than .5 grams of cocaine, a Class C felony.  On May 24, 2006, the petitioner entered guilty pleas to four of the counts of delivery of .5 grams or more of cocaine and to the single count of delivery of less than .5 grams of cocaine in exchange for concurrent sentences as a Range II offender of eight years for each of the Class B felonies and three years for the Class C felony. Pursuant to the terms of his negotiated plea, the remaining count of the indictment was dismissed. At the guilty plea hearing, the prosecutor recited the proof the State would have introduced in support of the six-count indictment had the case gone to trial, informing the trial court of the facts

surrounding a confidential informant's monitored undercover drug purchases from the petitioner.

On August 10, 2006, the petitioner pled guilty in Case Number 06-01-0250 to a criminal information charging him with two counts of possession with intent to deliver .5 grams or more of cocaine, a Class B felony. Pursuant to the terms of his negotiated plea agreement, he was sentenced to concurrent terms of twenty years as a Range II offender for each count with the sentences to be served concurrently to his sentences in Case Number 06-01-0173, for an effective sentence of twenty years at thirty-five percent. The prosecutor recited the following factual basis for the pleas:

Had this matter gone to trial, Your Honor, the State would have introduced proof that on or about the 14th of October of 2005, agents of the West Tennessee Drug Task Force executed a search warrant at 100 Shirley Lane in Grand Junction, the residence of this defendant and Ms. Cassandra Pirtle. While there, they seized powder cocaine, crack cocaine and various other items. The amounts of the cocaine and crack cocaine both exceeded the .5 grams that would make this a Class B felony. That this did happen here in Hardeman County, Tennessee.

On December 4, 2006, the petitioner filed a *pro se* petition for post-conviction relief, alleging, among other things, that deficiencies in his trial counsel's representation resulted in his entry of unknowing and involuntary guilty pleas. The post-conviction court summarily dismissed the petition for failure to state a colorable claim. The petitioner appealed, and this court reversed and remanded to the post-conviction court for the appointment of counsel and an evidentiary hearing. See Jimmie Lee Hoyle v. State, No. W2007-00105-CCA-R3-PC, 2007 WL 2624240, at *4 (Tenn. Crim. App. Sept. 7, 2007). Following the appointment of counsel, the petitioner filed an amended petition alleging that counsel provided ineffective assistance by, among other things, failing to thoroughly explore the facts of the case, failing to investigate or consider the petitioner's health and mental issues, failing to develop any reasonable trial strategy or defenses, and failing to file a motion to suppress the results of the search.

At the February 29, 2008, evidentiary hearing, trial counsel testified that he was licensed to practice in Mississippi and Tennessee and had been practicing law for twelve years, with ninety-five percent of his practice consisting of criminal defense. He said that the petitioner originally retained him to represent him in Case Number 0250, the search warrant case, in which the petitioner was charged by affidavit with twelve separate offenses, six of which were drug-related. In the interim, however, a secret indictment came down in Case Number 0173. After reviewing the discovery in that case, which included DVDs of the drug transactions, trial counsel began negotiating for plea agreements in both cases.

Trial counsel testified that he met with the petitioner "many times." He said that the petitioner's daughter, Cassandra, was charged in the search warrant case with five of the drug transactions and that the State consented, as part of the petitioner's plea bargain agreement, for the charges against Cassandra to be handled by diversion. In addition, the State agreed to dismiss all but two of the charges in Case Number 0250; to allow the petitioner, who was at least a persistent and possibly a career offender, to be sentenced as a multiple offender; and for the sentences to run concurrently, resulting in an effective sentence of only twenty years at thirty-five percent.

Trial counsel testified that Cassandra and possibly another family member mentioned something to him about the petitioner's "being on disability or having some concerns." He said, however, that he asked the petitioner about it directly and never got any indication that the petitioner had any mental health problems. The petitioner was able to effectively communicate with him, to discuss the facts of his case, and to respond appropriately to his questions. Although the petitioner had some initial difficulty understanding the sentence calculations, trial counsel believed that it was more of a "mathematical situation," which was not uncommon with clients. He, therefore, "broke it down to him in writing and verbally." Trial counsel testified that he reviewed the search warrant and underlying affidavit and, in his professional opinion, did not believe that the warrant could be successfully attacked. He said he expressed his opinion to the petitioner, advising him that he thought it was in his best interest to accept the deal, but also made it clear to him that the decision was his alone.

On cross-examination, trial counsel testified that the petitioner appeared on the drug transaction videotapes to know what he was doing. He said that the petitioner did not appear to have any kind of physical disability and never mentioned anything to him about any fire ant sting injury that would have affected his ability to understand his cases. Trial counsel testified that, had the petitioner been convicted of the offenses at trial, he thought it probable that consecutive sentencing would have been ordered on at least two or three of the counts. He agreed, therefore, that the petitioner faced an effective sentence of "at least close to a hundred years in prison."

The forty-three-year-old petitioner testified he thought that trial counsel failed to meet adequately with him or to thoroughly explore the facts of his case. He believed that trial counsel should have moved to suppress items that had been recovered from some of the vehicles at his residence. He said he informed trial counsel that he was a mechanic and that some of the vehicles did not belong to him, but trial counsel did not file a motion to suppress. The petitioner stated that trial counsel never talked to him about the evidence against him in the case. Instead, trial counsel informed him of the situation he was facing, telling him if he did not "take the charge," the State was going to take his daughter's baby. The petitioner explained that his daughter was pregnant at the time and that the State was threatening that she would lose custody of the baby if she were convicted of the charges. He, therefore, felt that the State had him "pinned in the corner," leaving him with no other choice than to accept the plea bargain agreement.

The petitioner testified that he was stung by fire ants in 1992, which caused him to lose his memory and his ability to walk and use his hands. He agreed that the fire ant injury was the reason he received disability benefits. He said he was "disturbed like four years," and had "just relearned what [he] could and got back to working on cars." He stated that he was in special education classes in school and was promoted to the eleventh grade. According to his testimony, he was currently attending GED classes in prison but was unable to read or spell and was working at only the second grade level.

On cross-examination, the petitioner acknowledged that, at both guilty plea hearings, he informed the trial court that he was satisfied with trial counsel's representation and was freely and voluntarily entering the pleas. He agreed that he was facing a potential sentence of over a hundred years and said that trial counsel "done his job, true enough." He reiterated on redirect examination,

however, his belief that he had been "hemmed up in the corner" with no choice but to accept the plea agreements if he wanted his daughter to keep custody of her child.

On March 6, 2008, the post-conviction court entered a written order denying the petition for post-conviction relief, finding that the petitioner had failed to meet his burden of demonstrating that he received ineffective assistance of counsel or that his guilty pleas were unknowing and involuntary. Thereafter, the petitioner filed a timely appeal to this court.

## ANALYSIS

The petitioner contends on appeal that trial counsel was deficient in his representation for failing to investigate his mental health and physical and educational limitations and that this failure "resulted in . . . guilty pleas which were neither 'knowingly or voluntarily' entered into." The State argues, among other things, that the post-conviction court properly found that the petitioner failed to show that trial counsel was deficient for failing to have him evaluated or that he was forced to enter into the plea agreement. We agree with the State.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the trial court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e*., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709 (1969), and the state standard set out in State v. Mackey, 553 S .W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242, 89 S. Ct. at 1711. Similarly, our Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904. Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Id. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

In denying post-conviction relief, the post-conviction court noted the petitioner's responses during the plea colloquy, in which he informed the trial court that he fully understood the plea agreements, was satisfied with the representation of counsel, and was voluntarily entering his pleas. The post-conviction court further noted trial counsel's testimony that he saw nothing from his conversations with the petitioner that indicated a need for a mental health evaluation. The post-conviction court's order states in pertinent part:

> One of the petitioner's complaints in that he believes his competency and ability to proceed should have been further investigated. However, there was no credible testimony as to the need of any mental evaluation. Considering the

overwhelming evidence against the petitioner and the testimony at the post-conviction hearing about his defense, the Court believes his attorney negotiated the best deal possible.

The Court finds that the petitioner actually understood the significance and consequences of the particular decision to plea[d] guilty and the decision was not coerced. The petitioner was fully aware of the direct consequences of the plea, including the possibility of the sentence actually received. He was informed at the plea hearing of the sentence. The record reflects that the petitioner appeared to understand the questions asked during his plea and answered each question as posed by the Court. The petitioner was facing a potential sentence of one hundred years if the matters had been successfully prosecuted.

The record fully supports the findings and conclusions of the post-conviction court. Trial counsel's testimony, which was specifically accredited by the post-conviction court, established that he met with the petitioner many times and never saw anything to indicate that a mental evaluation was warranted. The petitioner was able to communicate effectively with him and appeared to understand the charges, the evidence against him, the risks he faced with trial, and the plea agreement offered by the State. The petitioner never mentioned the fire ant stings and did not appear to have any physical or mental disability that would affect his ability to enter a voluntary and knowing guilty plea.

The petitioner testified that he received disability benefits as a result of the injury caused by the fire ant stings, stating that "[i]t made [his] head burn[]." However, he neither testified nor presented any other evidence to show that his disability benefits were based on any mental impairment. To the contrary, he acknowledged having assured the trial court at his plea colloquies that he had been fully informed of the consequences of his guilty pleas and was voluntarily and knowingly choosing to plead guilty rather than proceed to trial. The petitioner's only real complaint at the evidentiary hearing was that he had felt pressured into accepting the plea agreements because of his desire to help his daughter retain custody of her child. However, the mere fact that the petitioner felt personal pressure, in the form of his love and concern for his daughter and grandchild, does not translate into his having been "threatened" or "coerced" by either his counsel or the prosecutor into pleading guilty. We conclude, therefore, that the petitioner has failed to prove his factual allegations by clear and convincing evidence.

## CONCLUSION

Based on our review, we conclude that the petitioner has not met his burden of showing that he received ineffective assistance of counsel or that his guilty pleas were unknowing and involuntary. Accordingly, we affirm the denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE